United States v. Edwin Omar Almonte-Nunez. Thank you. Mr. Brownlee? Oh, Michelle. Michelle Brownlee. Good morning. May it please the Court? Good morning, Your Honors. Mike Brownlee. I'm here on behalf of the appellate, Edwin Almonte-Nunez. And I'd like to request three minutes for rebuttal. You may. Thank you, Your Honors. As Your Honors know, there are enough issues afoot in this appeal to make your head spin. So I think it makes sense to focus on two of them for purposes of today. The first would be Mr. Almonte-Nunez's argument under Johnson v. Davis in 2019. And the second would be Mr. Almonte-Nunez's argument under Sanchez-Valle. If the Court has any inclination to start with either argument. It's your time. Any of the others? Okay. So I'm going to start with the Johnson argument. Almost four years ago, when Mr. Almonte-Nunez submitted his opening brief, he argued that Section 2112, which was his main offense of conviction, did not qualify as a crime of violence under 924C3. The Court knows there are two ways you can meet the definition of a crime of violence under that statute. The first is the force or elements clause, and the second is the residual clause. So the government now relies entirely on the force clause. The residual clause has been held unconstitutional. So why isn't it appropriate for the government to rely on the force clause? Because I believe the government's waived that position. It hasn't appeared anywhere in its briefing. In our opening brief, we spent about ten full pages arguing why the force clause wouldn't apply under the circumstances of this case. In the government's responsive brief, there's no discussion whatsoever of the force clause, and they put all their eggs in the basket of, you know, we couldn't establish plain error because there was a circuit split at the time on the residual clause for 923. Because at that point, when the opening brief was filed, the residual clause had only been invalidated as to the ACCA, and then later in Sessions v. Amaya, it was also invalidated under similar language. But because the government elected not to address the force or elements clause, our position is that that's been waived. Are we supposed to ignore the facts of this case as we hear arguments? I'm sorry? Should we ignore the facts of this case? This gentleman beat up with a revolver a woman who lost her eye because of it, and you're alleging that is not a crime of violence? Terrible crime, and frankly, Your Honor, if I had to do the categorical analysis over again, if I were in the U.S. Supreme Court, that's probably not how I would do it, but that is the state of the law. I mean, it's a divisible statute. I'm not so sure about that, but continue your argument. I believe what the analysis calls for under the elements or force clause is you have to look at the elements of conviction and not the actual facts of the conviction. That's my understanding of the state of the law. Did I say some facts that aren't in the record? No, they're in the record. Okay, thank you. But I don't think this is a case where we have a divisible statute where we go to Shepard documents. I think you have to compare the elements of the crimes. You may be right. Why don't you talk about Stokeling? Well, again, I think the argument is... I know you think it's vague, but you've got to cover your bases. Stokeling involved Florida's robbery statute, right? So we're talking about two different statutory schemes. In Stokeling, didn't they say that common law robbery, which there are two for, we didn't think required the kind of force contemplated by the force provision, but in Stokeling didn't the Supreme Court say that common law robbery categorically? I think in the context of... In Florida's statutory scheme, my understanding is that robbery was defined, right? Whereas in 2112, robbery is undefined. There's a district court case out of California that's bell decision, which is, I think, to date, the only one that analyzes whether or not a 2112 crime would meet the force clause. In a really lengthy analysis, they concluded no, and they based it on a Seventh Circuit opinion as well. I don't think either of those have been overruled by Stokeling, because we're dealing with a completely different statutory scheme, and one case where robbery was defined and another where it wasn't. But again, Your Honors, the briefing has been so limited on that. We briefed it, at least under Bell, but as far as Stokeling and its impact on the case, all we have is a page and a half of briefing from the government in a supplemental brief that frankly wasn't supplemental to anything that had been raised before. So to me, that's a garden variety waiver. We should even get into it, but at the very least, there should be an ability for us to respond to their supplemental brief and say, here are all the reasons to brief it to the extent it had been briefed before Stokeling had come out. The original government brief was filed before the residual clause was held under the Constitution, right? Correct. But if you read Davis, Your Honor, I don't want to put words in the court's mouth, but my understanding of Davis is that this is not a change in the law that should have been difficult to predict. This was a hotly contested issue, and I think if the government wanted to preserve its argument about how the force clause would work in this case, then it needed to have been briefed in response to our briefing on it, and even if argument would have been perfectly appropriate, and I think it should have happened. So we'd stand by our argument that their argument's been waived, and at the very least, if the court is going to decide it based on Stokeling, we'd like another opportunity to at least respond to their arguments. So moving on to Sanchez-Vaillant. This is a difficult one because obviously there was a seat change in the law in the middle of this case, and we originally, our position was that, and we motioned to the court to remand the case to the district court, because the record in this case, all we have in terms of the Puerto Rico convictions that were based on the same actions that gave rise to the federal charges and convictions. The state convictions are, as I have it here, the use of a firearm without a state license. Is that duplicated in the federal case? The second one was shooting and aiming a firearm. And the third one was aggravated assault in the third degree. Your Honor, but where we're getting that information from is a cryptic entry in a PSR. It doesn't even identify the specific statutory numbers for the statute of conviction in the Puerto Rico case. There are no charging documents. There's absolutely no information in the record, in my opinion, to perform a full elements analysis, which is why we asked the court to remand for the appointment of Spanish-speaking counsel and someone who could go through and flesh this all out. In fact, in the PSR, where it discusses the nature of those charges, it says, the government has received no documents whatsoever to corroborate any of the information that we're getting from probation. So I think to decide the case just on that cryptic information, the PSR would be a mistake. As I understand, there are two federal firearms charges here. One of them, it seems to me, is difficult for you from a double jeopardy standpoint because one of your arguments with respect to the Puerto Rican 5.04 statute requires the showing of the absence of a license, so that's an additional element. But there's also 5.15, which doesn't have that element in it, which is perhaps a lesser-included offense within the federal charge, right? Perhaps. But, Your Honor, I guess my point is, again, since the specific statutory provisions aren't enumerated in that PSR, we don't know for sure if the ones the government is saying are the ones he must have been convicted of. We don't know if those are actually the statutes at issue. And we also don't have any, the PSR itself says there's no backup information to go corroborate that. So I know I'm into my rebuttal time, so I'm going to sit down. Thank you. Good morning. Good morning, Your Honors. May it please the Court, John Taddy for the United States. Your Honors, as a threshold matter, I just want to address briefly the issue of the mandate rule and its application to this particular case. This case has had a long history, but it began before the Court of Appeals in 2014 when this court remanded to the district court for a straightforward ministerial imposition of a 120-month sentence on the defendant's 922G count because the district court had initially imposed an illegal 150-month sentence on that count. When this court in El Monte Nunez 1 imposed its mandate in this case, it wrote specifically, quote, we direct the district court on remand to enter a modified sentence of 120 months on that count, end quote. The purpose of that mandate was unequivocal, as this court wrote in Santiago Reyes, a comparable case where a defendant attempted to raise a Johnson claim following a sentencing remand from this court, and this court said that the Johnson claim was barred by the mandate. This court also cited Barnes in its first decision back in 2014, and what Barnes held is that a court does not need to even hold a sentencing hearing in order to impose a directed 120-month sentence in this case. Therefore, the government's position is that all of the defendant's arguments at this point in the second appeal, which fall outside of that particularly sentencing issue, are barred by the mandate rule. Because this court asked several questions about the application of Sanchez-Vaya as well as the application of Davis, I'll address those two issues on the merits as well. As the defendant has conceded with respect to the Davis issue first, the plain error standard applies, and the reason that the plain error standard applies here is because the defendant did not raise a Johnson-based claim or a Davis-based claim until his appeal. He spends the entirety of his argument, in his briefing at least, on the issue of waiver, claiming that the government has waived its argument that the elements clause analysis can apply here to get around the issue created by Davis and its invalidation of the residual clause. Waiver is the intentional relinquishment of a known right. And what the government did in its answering brief in this case, way back before Davis had been decided, was it relied on binding precedent from this court in United States v. Ponzo, which held that it was not plainly erroneous to conclude that the residual clause of 18 U.S.C. 924 C.3.B. is unconstitutional. The government, as appellee in this case, is only required to rely on that binding precedent in order to indicate to the court that the appellant's claim that his conviction cannot constitute a crime of violence is invalid. What happened after that, as I think two judges on the panel were indicating, was that you have an intervening decision in Davis that occurred after briefing had been concluded on that particular issue. This court invited supplemental briefing, and in its supplemental briefing, this court pointed out the invalidation of Davis, which overrules Ponzo. And it also pointed out, at the court's invitation to address any other relevant precedent, that in Stoepling, the Supreme Court specifically addressed the issue of whether common law robbery constitutes a violent felony under the ACCA, which is interpreted interchangeably with the Elements Clause definition for crime of violence under 18 U.S.C. 924 C.3.A. And what the court held in Stoepling was that the common law definition of robbery meets those requirements for a certain degree of violent force in order to constitute a violent felony or a crime of violence under the Elements Clause. I believe it's without dispute in this case that the particular statute at issue for the crime of violence analysis, 18 U.S.C. 2112, incorporates the common law definition of robbery. It's defined as, quote, punishing whoever robs or attempts to rob another of any property belonging to the United States. In this case, it was the United States passenger. Yes, before you run out of time, I have a concern about one aspect of the double jeopardy thing. Yes, Your Honor. And I'm focusing now on the federal charge for a violation of 924 C. and the Puerto Rican charge of violation of 5.15. And my understanding of the government's argument is that the federal offense requires brandishing and that the state offense requires aiming or discharging. But it seems to me also that if you look at the, I think it's the pre-sentence report at A20, it says that the federal charge and the state charge were based on the same conduct. So why isn't it a situation where we can assume that the federal charge, which describes aiming the gun at the victims, is what was being charged in the state court? So the relevant analysis... Do you understand my question? I believe I do, Your Honor, and please correct me if I do not. So the government does concede that the Puerto Rico charges and the federal charges are based on the same conduct. So because understandings by Puerto Rico and the United States are the same sovereign, the court needs to engage in the Blockberger analysis, which asks whether each of the convictions, state and federal, so four state, three federal in this particular case, if each conviction, the underlying crime has an element that the other crimes do not have. So in your example, Your Honor... But you don't have to look just at the face of the statute. Yes, you look at the face of the statute, exactly. No, but you can also look at what the conduct was that was being charged, right? Well, if the conduct is different, then what you have is completely separate offenses based on separate conduct. No, no, no, but what I'm suggesting here is you look at the charged conduct. The charged conduct is the same, aiming a pistol at someone's head. So the charged conduct, yes, Your Honor, we do not dispute that the charged conduct is different, but the difference is that... You don't dispute it's the same. You agree it's the same. I agree that it's the same conduct that has been charged, but the difference here is that the crimes that the defendant was convicted of have different elements. So for that particular statute, 25LPRA, and I'm using the English language versions that are available online, 25LPRA 458N, it requires the defendant to aim a weapon towards a person. That's an element of that particular offense. For the 924C offense, aiming a weapon at somebody is not required as an element of that conviction for 924C. So you can prove a 924C offense without having aiming being proved before a jury or admitted in a guilty plea. However, 924C also requires an element that LPRA 458N does not require, and that's, for example, brandishing, as Your Honor pointed out. I understand. If you look at the face of the statute, there's overlap between the two, but they're not the same. But I would have thought that you could look to see what the charged conduct is also. You could look at the charged conduct, Your Honor, but in this particular case, the conduct that was being charged in general, the idea that the defendant was, you know, had this particular gun, that he brandished it, that he pointed at somebody, it's relatively overlapping conduct. So it's the government's position that would be a more straightforward path to rejecting the double jeopardy claim if the court were to just look at the elements of the offenses that the defendant was convicted of and note that each offense has an element that the other offenses do not have. And therefore, under Blockberger, even under a de novo standard review, which we're not at here, we're at a plain error standard review, which the defendant hasn't carried, by the way, you would have separate elements for each offense. And therefore, the defendant's double jeopardy claim must fail. How do you respond to counsel's argument that all you're doing is speculating as to what the state charges were since there was nothing in the PSR and no documents, that you're sort of guessing at which Puerto Rico statutory codes he violated? So in our briefing, we have attempted to identify the particular LPRA or Puerto Rico article sections, as Your Honor was referring to, that correspond to what's been said. How is that not just speculation? Well, it's an educated, I'd say it's more of an educated analysis based on the title of the provisions. Well, is that good enough? Well, in this circumstance, Your Honor, I think what's important to consider is the procedural posture here. Assuming you think the mandate rule bars us from talking about any of this, including Sanchez? Well, I think the more appropriate venue for the particular claims the defendant is raising here, including Sanchez, would be on collateral review. What he should have done is he should have filed. That doesn't answer the question. You think the mandate rule bars us? I do. Yes, I apologize, Your Honor. That's okay. I think the mandate rule bars consideration of both the 924C issue and the Sanchez-Valle issue. In fact, in our 28J that we filed last week, we cited a case called Pacheco, where this court addressed the Sanchez-Valle issue on an even more limited record than we have here. It was just Spanish language documents that this court could not consider because of the Jones Act. And it said, we do not have the ability to adequately consider the merits of the particular claim here, and therefore dismissed the defendant's appeal based on Sanchez-Valle grounds and urged him to file a collateral challenge under 2255. If the court does have questions about the record, that would be the appropriate disposition here. But it's the government's frontline position that the PSR does provide an adequate basis to accurately determine the convictions. Your Honor, I see my time has expired. May I finish my thought? Finish your statement. Yes, thank you, Your Honor. It does provide an adequate basis to identify the particular Puerto Rico title sections that apply. It's also notable that the defendant does not offer any particular provisions that he says do match up categorically with the elements of his federal offenses. Why would he do that? I'm sorry, Your Honor? Why would he do that? Well, it's his burden. That's why he would do that. He has to show that there is an error and that the error was plain. The error he's claiming is that his federal convictions are in violation of double jeopardy, and therefore he must show, based on the plain error standard, that that error applied in this case, that his federal convictions have the same element as the state convictions. He has made no effort to do that. All he has done is attempt to attack the government for failing to disprove his claim. That's not where we are at this particular point in this case. Could I ask a hypothetical? Suppose the federal charge was he brandished a weapon by aiming it at someone, and the state charge on its face said he aimed the weapon. Would double jeopardy bar the federal charge under those circumstances? So I think what you're talking about, Your Honor, is the possibility that there is a lesser included offense situation here. Yes, yes. So if the statute required him. If each charge explicitly said he's charged with aiming a weapon. Yes. So if aiming a weapon is an element of the federal offense and that is required. No, it's not an element of the federal offense. It's the same statute that we have now. But the charge in the state court is he violated the statute by aiming. The federal indictment says he violated the brandishing statute by aiming. Is the federal charge barred by double jeopardy? No, Your Honor, because aiming would not be a required element of the offense for your hypothetical. In that circumstance, the government can offer evidence that the defendant aimed the weapon, but the government did not have to prove that he aimed the weapon in order to sustain a conviction. And that's what Blockberger says. It says you look at the elements of the crime that the defendant has been convicted of. Not gratuitous facts or, you know, 404B or other evidence that the government could offer up at trial. And then based on looking at those elements, you determine whether they are the separate offenses because they each require a distinct element to prove the crime. And if they do require a distinct element, as all of the seven crimes in this case do require, then double jeopardy has no application. Thank you. Thank you, Your Honors. Your Honors, the question I have is why are we speculating about all of this stuff? I mean, there are a number of really, really easy ways. Why don't you just address the mandate rule first? Sure. I mean, the mandate ‑‑ I don't think we're here on ‑‑ as far as I'm concerned,  We're here ‑‑ we had a sea change, a change in decisional law from the U.S. Supreme Court that gets you out of law of the case. And nothing precludes this court right now from addressing on plain air review or de novo as we think it should be. It's right for this court to determine. And you're saying the elements are the same in both the state and the federal? No, Your Honor. I'm saying that we do not know from the record. We do not have a sufficient record to make that analysis. And what I find troubling is that we ask to relinquish jurisdiction to the lower court to have this very conversation and get to the bottom of this. We don't want to waste anyone's time. If they're correct, let's get this done. But they objected to that. And moreover, if all of these documents said, if it was as clear as the government is saying that it is, there's another really easy way. Ask to supplement the record on appeal. We wouldn't have objected to it. Provide the documentation. Let's see if these things line up, and we'll go from there. Right now we've got a very cryptic description of the charges in the PSR, and I don't think that's enough to go on. I just want to go back to the mandate rule. The mandate rule is usually a very restrictive doctrine, which says that the district court can't consider issues beyond the limited purpose of the remand. And that's what the district court did here. And so the district court hasn't ruled on your Sanchez because of the mandate rule. And do you think that that's erroneous? How do you get around? Why don't you think the mandate rule was so limiting? And why isn't your proper remedy to seek collateral relief? Because, Your Honor, I think the mandate rule still afforded some level of discretion to the district court. But what are you citing in support of that proposition? Well, the district court did basically a full-blown resentencing over no objection from the government. The government never said at any point during that resentencing, hey, hold on a second. You know, the only thing that we're here to do is this limited modification of sentence. The defendant was there. The court invited the defendant to allocute. And I think this court is fully able to, I think the claim under Sanchez-Valle is right for the court. Frankly, I think it's a closer call under Johnson. But I think as far as Sanchez-Valle goes, I think that's fair game for this court to decide. And his appeal is not final yet. I mean, or excuse me, his sentence is still not final yet. He's still on direct-ish appeal. But I think there's ambiguity there. And I think the court can address the Sanchez-Valle claim. Why take it back all the way to for collateral review and a whole different habeas proceeding? It doesn't make sense. And it imposes a lot of additional obligations on my client that I don't think he should have, procedural hurdles that I don't think he should have to jump through. And one last comment, Your Honors, before my time runs out is on pages 8 to 10 of the reply brief, we provide a pretty lengthy analysis of why the Puerto Rican statutes that the government is suggesting my client violated, why those don't, in my reading of the law of Puerto Rico, are not likely to be the ones that he was actually convicted of. So I just urge the court to look at the reply brief at pages 8 to 10. Thank you. Thank you, Your Honors. Okay. We've got to take a short break. All rise. Okay.